SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
**DENTONS US LLP**
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924

JOSEPH R. LAMAGNA (Bar No. 246850)
jlamagna@health-law.com
DEVIN M. SENELICK (Bar No. 221478)
dsenelick@health-law.com
JORDAN KEARNEY (Bar No. 305483)
jkearney@health-law.com
**HOOPER, LUNDY & BOOKMAN, P.C.**
101 W. Broadway, Suite 1200
San Diego, California 92101
Telephone: (619) 744-7300
Facsimile: (619) 230-0987
*Proposed Attorneys for the Chapter 11 Debtor and Debtor In Possession*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>Debtor and Debtor in Possession. | Case No. 22-02384-LT11<br><br>Chapter 11 Case |
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES,<br><br>Defendant. | Adv. Pro. No. No. 22-90056-LT<br><br>**SUPPLEMENTAL DECLARATION OF JACOB NATHAN RUBIN, PATIENT CARE OMBUDSMAN, IN SUPPORT OF EMERGENCY MOTION: (I) TO ENFORCE THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; OR, ALTERNATIVELY (II) FOR TEMPORARY RESTRAINING ORDER [Docket Nos. 3, 7]** |

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**SUPPLEMENTAL DECLARATION OF DR. JACOB N. RUBIN**

I, Dr. Jacob N. Rubin, M.D., hereby state and declare as follows:

1. My name is Jacob Nathan Rubin, and I am the Patient Care Ombudsman (the "PCO") appointed in the above-captioned bankruptcy case (the "Case") of Borrego Community Health Foundation (the "Debtor") [Bankr. Docket No. 25] pursuant to 11 U.S.C. § 333(b).

2. As PCO, my duties include independently monitoring the quality of patient care provided to patients of the debtor, to the extent necessary under the circumstances, including interviewing patients and physicians and to provide reports to the Court if I determine that patient care is declining significantly or is otherwise being materially compromised. 11 U.S.C. §§ 333(b)(1) and (3).

3. I submit this Declaration in furtherance of my duties as PCO and in support of the Debtor's *Emergency Motion: (I) To Enforce The Automatic Stay Pursuant To 11 U.S.C. § 362; Or, Alternatively (II) For Temporary Restraining Order* [Docket No. 3] as supplemented by that *Ex Parte Application Supplementing Emergency Motion: (I) To Enforce The Automatic Stay Pursuant To 11 U.S.C. § 362; Or, Alternatively (II) For Temporary Restraining Order* [Docket No. 10] (the "Application" together with Docket No. 3 and as supplemented, the "Motion"), as a supplement to my *Declaration of Doctor Jacob Rubin* already filed in support of the Motion [Docket No. 4], and in support of this Court entering the order attached as Exhibit A to the Application as soon as possible.

4. In making this Declaration, I rely on my experience as a medical doctor licensed by the State of California and in hospital operations and management spanning 30 years.

//

//

//

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

**September 27, 28 and 29 Visits and Ongoing Danger to Patients, including Pregnant Patients**

5. With my consultant Dr. Tim Stacy, I visited the Debtor's facilities on September 27 and 28, 2022. During these visits, I learned that Inland Empire Health Plan has been transferring and continues to transfer patients to other provides and/or hospitals without notice to, or knowledge of, such patients.

6. Other providers and hospitals may be as far as 1.5 to 2 hours away from the patients (for example, I visited a clinic where many patients access the facilities ***by foot***), and, as a result, patients, many of whom subsist on a low-income, do not have the means to obtain transport themselves to the new providers. Of particular concern are the pregnant patients that rely on the Debtor and its facilities. For example, Desert Regional Medical Center, which is the primary source for deliveries for pregnant women and in which approximately 60 deliveries occur per month (many high risk), has been changed to providers that are 1.5 to 2 hours away. These pregnant patients simply cannot make these changes without serious risk to their health and that of their unborn children. These patients are in urgent need of medication and continuity of healthcare, but are not able to receive it. I have come to this conclusion by my review of patient insurance cards and discussions with the Debtor's women's health clinic.

**September 28 Visit and Ongoing Danger to Hepatitis C and HIV/AIDS Patients**

7. On September 29, 2022, I and Dr. Stacy visited Stonewall Medical Center, which focuses on hepatitis C and HIV/AIDS patients, and transgender health. I am informed and believe that it provides care to more than 1000 patients. In my professional opinion, there are no acceptable alternatives to the treatment provided by this clinic. Because of the notification from DHCS to the health plans whose patients are assigned to this clinic, I am informed and believe those health plans are transferring patients to remote and insufficient alternative care sites. These patients will suffer immediate and irreparable harm if DHCS does not instruct the health plans

to return those patients to Debtor's care immediately. This is a true emergency that cannot wait a day.

8. I also engaged in discussions with the physician and providers yesterday for this clinic, wherein I learned that the majority of the served HIV patients are elderly. The burden placed on these patients to find new providers and traveling long distances in hopes of getting their medication timely is unreasonable and inhumane. Without timely medication, HIV viral loads increase, CD4 counts reduce that rapidly increase the conversion risk to AIDS. This will lead to the transmission of the virus to partners and increase in community incidence rates creating a public health hazard.

9. Additionally, removing access to the 340-B pharmacy (carrying medicines that are not available at most commercial pharmacies such as CVS and Walgreens), on the premises of the HIV clinic and only accessible to the clinic's patients, may make the critical medications unobtainable. The standard regimen is called HARRT (Highly Active Antiretroviral Therapy). The name speaks for itself. Any interruption to the medical treatment, even for just a few days, can lead to drug resistance given the resilience of the virus.

**Conclusion**

10. As the PCO, I am the "boots on the ground" and I have witnessed the potential for serious, life-threatening deficiencies in the past 72 hours that will occur if unchecked. **These deficiencies are the result of the health plans moving patients based upon representations by DHCS to the health plans.** Despite the foregoing, the clinics are seeing the patients who have been disenrolled because of their concern, compassion and long-term relationships with the patients and their families.

11. In contrast, DHCS' total disregard for the patients and the providers is shocking. I cannot discern why DHCS, no matter what kind of financial facts it believes exist, has taken actions that are causing health plans to move patients from an organization that is providing healthcare consistent with the standard of care and with no reasonable alternatives for the patients.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

12. I can represent that based on my visits and my three decades of experience, including as PCO in other cases, that the Debtor is currently serving the intended community when no one else can. The patients are well cared for. The providers are dedicated and compassionate. The clinics are state of the art and spotless. The consequences of a shut down or material drawback of services is devastating. To protect the patients, DHCS must direct the health plans to re-assign the patients back to the Debtor and DHCS must continue to pay the Debtor for healthcare provided by the Debtor to its patients.

**Affirmation of Statements in Maizel**

13. I also affirm the statements that Samuel R. Maizel attributed to me in his *Supplemental Declaration* in support of the Motion [Docket No. 10 at pp. 7-31] (the Supplemental Maizel Decl.) in paragraph 9.

14. I **have:**

> *[G]reat concern with regard to patient care because Inland Empire Health Plan, and possibly other plans, is reassigning patients from the Debtor to other providers, often apparently without notice to the patients, and telling the Debtor's representatives that they are doing this because of instructions from DHCS. The net result is that patients show up for appointments, and when intake tries to verify their coverage (which requires verifying that they are a patient assigned by the health plan to the Debtor) they are being told the patient is no longer assigned to the Debtor. In some cases the Doctors, unwilling to abandon longstanding patients, are treating them anyway. This is not a viable solution because (a) the Debtor will be effectively providing free care, and (b) the Doctor cannot refer the patient to a specialist, because the health plan will not accept that referral. In other cases the patients are being turned away, sometimes with no idea of where to go for medical care or having been reassigned to a doctor too far away for them to get there.*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300

15. All of the statements attributed to me in paragraph 9 of the Supplemental Maizel Decl. are accurate.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 29th day of September 2022, at Los Angeles, California.

Dr. Jacob R. Rubin

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
(213) 623-9300