1  SAMUEL R. MAIZEL (Bar No. 189301)
   samuel.maizel@dentons.com
2  TANIA M. MOYRON (Bar No. 235736)
   tania.moyron@dentons.com
3  **DENTONS US LLP**
   601 South Figueroa Street, Suite 2500
4  Los Angeles, California 90017-5704
   Telephone: (213) 623-9300
5  Facsimile:  (213) 623-9924

6  JOSEPH R. LAMAGNA (Bar No. 246850)
   jlamagna@health-law.com
7  DEVIN M. SENELICK (Bar No. 221478)
   dsenelick@health-law.com
8  JORDAN KEARNEY (Bar No. 305483)
   jkearney@health-law.com
9  **HOOPER, LUNDY & BOOKMAN, P.C.**
   101 W. Broadway, Suite 1200
10 San Diego, California 92101
   Telephone: (619) 744-7300
11 Facsimile: (619) 230-0987

12 *Proposed Attorneys for the Chapter 11 Debtor and Debtor In Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br><br>BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>  Debtor and Debtor in Possession. | Case No. 22-02384-11<br><br>Chapter 11 Case |
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>  Plaintiff,<br>v.<br><br>CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES,<br><br>  Defendant. | Adv. Pro. No. 22-90056<br><br>**DECLARATION OF JOSEPH R. LAMAGNA IN SUPPORT OF EX PARTE APPLICATION SUPPLEMENTING EMERGENCY MOTION: (I) TO ENFORCE THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362; OR, ALTERNATIVELY (II) FOR TEMPORARY RESTRAINING ORDER**<br><br>**Judge: Honorable Laura S. Taylor**<br>**Date: September 30, 2022**<br>**Time: 11:00 a.m. Pacific** |

## DECLARATION OF JOSEPH R. LAMAGNA

I, Joseph R. LaMagna, hereby state and declare as follows:

1. I am an attorney licensed to practice law in the State of California, and a partner in the law firm of Hooper, Lundy & Bookman. I have been a healthcare attorney since 2006, and I currently represent Borrego Community Health Foundation ("Debtor"), including with respect to its efforts to meet and confer with the Department of Health Care Services ("DHCS") regarding the ongoing partial payment suspension for in-house dental care and the proposed 100% payment suspension. I have been working with Debtor since 2020, including meeting and conferring with DHCS when it instituted its first 100% payment suspension and then agreed to adjust it to the partial payment suspension applicable to dental claims that remains in place today. I have had dozens of phone calls with DHCS and its representatives regarding the Debtor and its performance under the partial payment suspension and agreements with DHCS.

2. I am providing this declaration to apprise the Court of certain facts and opinions relevant to the Debtor's pending *Emergency Motion: (I) To Enforce The Automatic Stay Pursuant To 11 U.S.C. § 362; Or, Alternatively (II) For Temporary Restraining Order* (the "Motion") and its Ex Parte Application Supplementing Emergency Motion: (I) To Enforce The Automatic Stay Pursuant To 11 U.S.C. § 362; Or, Alternatively (II) For Temporary Restraining Order (the "Ex Parte Application").

3. A provider, such as Debtor, has a right to meet and confer with DHCS regarding a proposed payment suspension. The Debtor exercised that right, and the meet and confer process has been ongoing. As part of that process, I have been communicating with DHCS about materials that the Debtor has requested DHCS to consider when the Debtor asks DHCS to rescind the payment suspension notice and stay its implementation.

4. As part of that process, I have had ongoing email exchanges with DHCS's attorneys, which is attached as Exhibit A.

5. The most recent communication in the email chain requests DHCS to review its notices to plans regarding the proposed 100% payment suspension and to correct the confusion that they have created.

6. I have reviewed DHCS's September 28, 2022 notice to health plans regarding the stay of its proposed 100% payment suspension for the Debtor.

7. The notice directs plans to a DHCS All Plan Letter ("APL"), "APL 21-003". APLs inform plans of DHCS's position on various matters.

8. APL 21-003 does not apply to payment suspensions, because there is no requirement for plans to terminate providers under a payment suspension. Rather, APL 21-003 applies only to situations where plans terminate contracts with providers, including those involving terminations of providers when a provider has been suspended from Medi-Cal. APL 21-003 directs plans on what they are to do when the plans terminate a provider contract, and particularly when the contracts are terminated due to DHCS suspending a provider. Thus DHCS's reference to APL 21-003 with regard to the Debtor's situation is gratuitous, confusing and misleading.

9. For the payment suspension at issue here, DHCS would allow Debtor's to remain Medi-Cal providers, but would withhold payment and expect plans to withhold payment from providers with the NPI numbers identified in the notices. A payment suspension is thus very different than a suspension.

10. The only part of APL 21-003 that would apply to a payment suspension would be footnote 2, which states, "MCPs are not obligated to terminate contracts with Network Providers and Subcontractors placed under a payment suspension. MCPs may continue the contractual relationship; however, MCPs may not pay the Network Provider/Subcontractor until the suspension is lifted." In other words, the only applicable part of APL 21-003 to the Debtor's situation is the footnote that explains APL 21-003 does not apply to payment suspensions; i.e., it doesn't apply to the Debtor's situation.

11. There was no need to refer to APL 21-003 at all in the notice regarding the delay in imposing the total payment suspension and thereby create any confusion. DHCS could have avoided the problem by just updating the plans that the payment suspension is being stayed until October 6, 2021 and request that plans maintain the status quo until then.

12. Plans and providers routinely comply with DHCS's directions and requirements, even if not legally obligated to do so. A reasonable plan reviewing DHCS's notice would likely be

3

confused about the type of suspension at issue and the applicability of APL 21-003 and what DHCS wanted the plans to do.

13. Plans will typically take a path that is most likely to avoid dispute with DHCS or even try to take action that would appease DHCS. Plans and providers to not want to be the focus of allegations that a plan has not complied with an APL or the law. Such motivation is exacerbated when there is ambiguity. The confusing nature of the terminology of a suspension and a payment suspension, the differences of which are not always clear even to participants in Medi-Cal and their advisors, coupled with a statement from DHCS referencing ambiguous terms creates pressure on plans to try to interpret what DHCS wants.

14. Thus, the DHCS notice and its general reference to APL 21-003, which does not apply to payment suspensions, is likely a contributing cause to plans providing notice of non-payment, termination, and reassignment of patient lives, which would apply to suspensions as referenced in the APL.

15. Moreover, DHCS telling plans that they do not have to terminate provider contracts is hollow and would likely be interpreted to have an implicit message that DHCS welcomes non-mandatory termination of the contracts. Indeed, the plans know that DHCS is trying to suspend payments to Debtor, and when DHCS tells the plans they do not have to terminate the Debtor, a plan can reasonably interpret that message as one implicitly requesting plans exercise their discretion to terminate the provider, especially when DHCS did not tell the plans not to terminate Debtor either.

16. A request from DHCS is likely to be respected by plans, as rational participants in Medi-Cal do not want to receive unnecessary scrutiny by DHCS, if it can be avoided.

17. Thus, any clarification from DHCS about its notice and reference to APL 21-003, which includes a request from DHCS to stop reassigning lives of patients who have not requested reassignment, will be respected by plans.

18. Plans would similarly follow DHCS's direction to reassign lives that the plans should not have moved after DHCS's notice.

19. I have reviewed the Declaration of Dana Durham, the Chief of the Managed Care Quality and Monitoring Division of DHCS [Adv. Pro. Docket No. 17]. In paragraph 11 of her

4

declaration, she explains that in the correspondence dated September 28, 2022, DHCS referenced APL 21-003, which is titled "Medi-Cal Network Provider and Subcontractor Terminations", apparently for the sole purpose of referring to a footnote that said that APL 21-003 didn't apply to payment suspensions. I note that she does not explain why DHCS had never cited this APL in any prior correspondence related to the renewed total payment suspension nor does she explain why they cited it at all, given their concession that it didn't apply.

Executed this 30th day of September 2022, San Diego, California.

_____
Joseph R. LaMagna