SAMUEL R. MAIZEL (Bar No. 189301)
samuel.maizel@dentons.com
TANIA M. MOYRON (Bar No. 235736)
tania.moyron@dentons.com
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone:    213 623 9300
Facsimile:    213 623 9924

JOSEPH R. LAMAGNA (Bar No. 246850)
jlamagna@health-law.com
DEVIN M. SENELICK (Bar No. 221478)
dsenelick@health-law.com
JORDAN KEARNEY (Bar No. 305483)
jkearney@health-law.com
HOOPER, LUNDY & BOOKMAN, P.C.
101 West Broadway, Suite 1200
San Diego, California 92101
Telephone:    619 744 7300
Facsimile:    619 230 0987

*Proposed Attorneys for the Chapter 11 Debtor and Debtor In Possession*

# UNITED STATES BANKRUPTCY COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>Debtor and Debtor in Possession. | Case No. 22-02384-LT11<br><br>Chapter 11 Case |
| BORREGO COMMUNITY HEALTH FOUNDATION, a California nonprofit public benefit corporation,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES, by and through its Director, Michelle Baass,<br><br>Defendant. | Adv. Pro. No. 22-90056-LT<br><br>**DEBTOR'S RESPONSE TO OBJECTIONS AND MOTIONS TO STRIKE INITIAL RUBIN DECLARATION IN SUPPORT OF EMERGENCY MOTION [DOCKET NO. 34] AND THE OBJECTIONS AND MOTIONS TO STRIKE SUPPLEMENTAL RUBIN DECLARATION IN SUPPORT OF EMERGENCY MOTION [DOCKET NO. 35]**<br><br>Judge: Honorable Laura S. Taylor<br>Date:   October 6, 2022<br>Time:  2:00 p.m.<br>Place:  Jacob Weinberger U.S. Courthouse<br>           Department 3 – Room 129<br>           325 West F. St.<br>           San Diego, CA 92101 |

122434291\V-5

i

Borrego Community Health Foundation (the "Debtor"), the plaintiff and the debtor and debtor in possession in the above-captioned cases (collectively, the "Case"), hereby submits this response to the *Objections and Motions to Strike Initial Rubin Declaration in Support of Emergency Motion* [Docket No. 34] and the *Objections and Motions to Strike Supplemental Rubin Declaration in Support of Emergency Motion* [Adv. Pro. Docket No. 35] (together, the "Objections") filed by Defendant California Department of Health Care Services ("DHCS"), which Objections seek to strike the declarations filed by by Dr. Jacob Nathan Rubin, M.D., the Patient Care Ombudsmen (the "PCO"): *Declaration of Jacob Rubin, Patient Care Ombudsman, In Support Of Emergency Motion: (I) To Enforce The Automatic Stay Pursuant To 11 U.S.C. § 362; Or Alternatively (II) For Temporary Restraining Order* [Adv. Pro. Docket No. 4] (the "Original Declaration"), and the *Supplemental Declaration of Jacob Rubin, Patient Care Ombudsman, In Support Of Emergency Motion: (I) To Enforce The Automatic Stay Pursuant To 11 U.S.C. § 362; Or Alternatively (II) For Temporary Restraining Order* [Adv. Pro. Docket No. 20] (the "Supplemental Declaration", and together with the Original Declaration, the "Declarations"). The PCO's Declarations were submitted in support of the *Emergency Motion: (I) To Enforce The Automatic Stay Pursuant To 11 U.S.C. § 362; Or, Alternatively (II) For Temporary Restraining Order* [Adv. Pro. Docket No. 3] (the "Motion").

## I.  INTRODUCTION

The PCO is an independent party appointed by the Office of the United States Trustee with the primary focus of patient care. After spending multiple days visiting the Debtor's facilities, reviewing primary records, interviewing physicians and patients on the ground, and *attempting* to speak with DHCS or Frank Stevens, DHCS'

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

monitor (the "Monitor"), at Berkeley Research Group ("BRG"),[1] the PCO submitted his Declarations and appeared for a preliminary hearing in the Case on September 30, 2022. The PCO informed the Court (i) that patients' lives were in danger, and (ii) what would occur if there was a block transfer of lives or suspension of Medi-Cal payments.

DHCS and the Monitor have stonewalled the PCO, made repeated excuses, and invoked a "privilege" when asked by the PCO to provide patient-welfare information. *See* supra, n. 1. Now, DHCS has raised highly technical Objections to *strike* the PCO's concerns, asserting that: (1) the testimony lacks foundation; (2) Dr. Rubin does not have personal knowledge; (3) the testimony is based on hearsay (and a sub argument that its "one sided" hearsay); and (4) the testimony is speculative. Adv. Pro. Docket No. 34 at 2-6; Adv. Pro. Docket No. 35 at 2-4.

---

[1] On September 28th, 2022 at 12:30pm, at the request of Dr. Rubin, counsel for the Debtor emailed DHCS's monitor, and asked to set up a call between the Monitor and Dr. Rubin to discuss patient care issues. At 2:08 pm that same day the Monitor responded by email that he had "discussed with DHCS and they ok'd the call as long as the attendees excluded counsel." On September 29, 2022, Dr. Rubin sent the Monitor an email request for information regarding the Monitor's role and observations about patient care. At 7:37am on October 2nd, 2022, counsel for Dr. Rubin followed up with an email to Kenneth Wang, counsel for DHCS, and Mr. Wang replied "As you are aware, BRG is retained by Borrego, not by the Department of Health Care Services. In addition, my office does not represent BRG." Counsel for DHCS made this blatantly false assertion despite express language (a) in the agreement between BRG and Borrego (the "Monitor Agreement") that "BRG will report directly to DHCS, and DHCS is not obligated to share BRG's reports with [Borrego]," and that "[t]he work undertaken by Monitor and BRG in connection with this matter is part of the DHCS's work product;" and (b) in the final settlement agreement between DHCS and Borrego that "Borrego agrees that the independent monitor shall take direction from and work exclusively for the benefit of DHCS. Borrego agrees that monitor shall report directly to DHCS."

Nonetheless, based on counsel for DHCS's assertion, counsel for Dr. Rubin then emailed counsel for the Debtor, repeating the request for information. Tania Moyron, counsel for the Debtor, promptly forwarded the request for information to the Monitor, with an express notation that the information was "critical" and should be "provided as soon as possible." The Monitor responded on October 2, 2022, that he and BRG "work directly for DHCS under privilege, we cannot provide anything without their approval. Our key contacts at DHCS were out last week and not returning till this week, which was part of our delay in responding." Mr. Stevens goes on to say "Once we receive a formal directive from DHCS, we will comply with the stated directive." Despite this promise by the Monitor, no response has been received to the requests for a conference call or production of documents from the Monitor.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

122434291\V-5

The Court should overrule the Objections and consider the PCO's testimony at the upcoming hearing, because (1) the testimony, offered to establish irreparable harm, is properly before the Court under the standards related to the proceeding under Rule 7065 of the Federal Rules of Bankruptcy Procedure, where the formal rules of evidence do not apply, (2) the testimony is based on the PCO's visits to the Debtor's facilities and expertise and in furtherance of his duties as PCO under § 333, and (3) the testimony is admissible regardless.

## II.  DISCUSSION

### A. THE PCO'S TESTIMONY IS PROPER UNDER RULE 7065 TO ESTABLISH IRREPARABLE HARM IN THIS EXPEDITED PROCEEDING

"[E]vidence in support of a preliminary injunction application need not meet normal evidentiary standards, and the court may consider and give weight to inadmissible evidence in considering preliminary relief," *Villery v. Beard*, 2018 WL 6304410, at *5 (E.D. Cal. Dec. 3, 2018) (citations omitted), because "[t]he urgency of obtaining a preliminary injunction necessitates a prompt determination .. [allowing the trial court to give] inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984) (cited by *Villery*). In other words, "[a] hearing for preliminary injunction is generally a restricted proceeding, often conducted under pressured time constraints, on limited evidence and expedited briefing schedules[, so] [t]he Federal Rules of Evidence do not apply to preliminary injunction hearings." *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) (citations omitted). For instance, a court may "consider hearsay in deciding whether to issue a preliminary injunction." *Indep. Techs., LLC v. Otodata Wireless Network, Inc.*, 836 Fed. Appx. 531, 533 n. 3 (9th Cir. 2020) (district court properly relied on hearsay emails) (citing *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (district court properly relied on "interested declaration" from counsel and also

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

3

unverified complaint) (citing *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir.1988) (en banc))); *see also Nulife Ventures, Inc. v. Avacen, Inc.*, 2020 WL 7318122, at *8–9 (S.D. Cal. Dec. 11, 2020) (overruling technical objections to a supplemental declaration submitted in support of a preliminary injunction, because of the court's "discretion to consider a variety of evidence at the preliminary injunction stage that may otherwise be inadmissible" and the "preference for flexibility" under FED. R. CIV. P. 65 expedited proceedings).

Here, the PCO's testimony "serves the purpose of preventing irreparable harm before trial," *Flynt Distributing Co., Inc.*, 734 F.2d at 1394, and DHCS' objections are not appropriate.

### B. THE PCO'S TESTIMONY IS WELL-FOUNDED, WELL-ANALYZED AND IS MADE PURSUANT TO HIS DUTIES UNDER SECTION 333.

Dr. Rubin also made his Declarations expressly pursuant to § 333(b), which expressly requires that a PCO:

> (1) monitor the quality of patient care provided to patients of the debtor, to the extent necessary under the circumstances, including interviewing patients and physicians;
>
> (2) not later than 60 days after the date of appointment, and not less frequently than at 60–day intervals thereafter, report to the court after notice to the parties in interest, at a hearing or in writing, regarding the quality of patient care provided to patients of the Debtor; and
>
> (3) if such ***ombudsman determines that the quality of patient care provided to patients of the debtor is declining significantly or is otherwise being materially compromised, file with the court a motion or a written report, with notice to the parties in interest immediately upon making such determination***.

11 U.S.C. § 333(b) (emphasis added). Notably, § 333(b) authorizes a PCO to interview third parties and monitor patient-care, and, if he or she determines that care is threatened, he or she is required to "file with the court" a document with these concerns – here, the Declarations.

Under section 333, the PCO "serve[s] as a 'patient advocate'—one who can

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

speak for the consumers of the health care business's services who might have different interests than [creditors]" such as DHCS. 3 Collier on Bankruptcy, § 333.01 (Matthew Bender 15th Ed. Rev.2005). Though he had sixty days to visit the Debtor's facilities under section 333(b)(2), the PCO, a practicing doctor, vigilantly and admirably cleared his schedule to visit the Debtor's facilities in September and determined that patient care was threatened, that it was threatened because of DHCS, and that harm would be irreparable (i.e. AIDS patients having medicine interrupted or pregnant patients having to travel hours through the desert for care). The PCO "interview[ed] patients and physicians," and investigated patient care "to the extent necessary" under 11 U.S.C. 333(b), and has now reported his finding to the Court in the Declarations. Consequently, the PCO's testimony should be included in the record.

## C. DR. RUBIN'S TESTIMONY IS ADMISSIBLE UNDER THE FEDERAL RULES OF EVIDENCE

DHCS (i) made the same four objections—that "(1) the statements lack foundation; (2) Dr. Rubin lacks personal knowledge, as required by [Federal] Rule [of Evidence] 602 [("Rule 602"); (3) the statements are premised on inadmissible hearsay statements under Rules 801- 802 [respectively, "Rule 801" and "Rule 802"]; and (4) they are speculative and based on unsupported assumption," to paragraphs 5, 7, 19-46 to Dr. Rubin's Original Declaration, and (ii) made substantively *identical* (*albeit* differently worded) objections – that "(1) these paragraphs lack foundation; (2) Dr. Rubin lacks personal knowledge; (3) these paragraphs are premised on hearsay statements; and (4) they are speculative" to paragraphs 5-15 of Dr. Rubin's Supplemental Declaration. Docket No. 34 at 2-6; Docket No. 35 at 2-4.

1. *Rule 602 Objections*

Three of DHCS' objections (i.e. lack of knowledge, lack of foundation and speculation) are premised on Rule 602, which provides that:

> A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness

5

122434291\V-5

> has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703 [concerning expert testimony].

Rule 703 of the Federal Rules of Evidence ("Rule 703") provides that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

*First,* even if not considered an "expert," (which he is, see infra), the PCO's testimony is well-founded and admissible. Under Federal Rule of Evidence 701, Dr. Rubin is "permit[ted] … to offer an opinion or inference that is rationally based on the witness's perceptions and that is helpful to the development of the evidence at trial." *United States v. Giovannetti*, 919 F.2d 1223, 1226 (7th Cir. 1990) (J. Posner) (citing FED. R. EVID. 701).  Here, the PCO testified that he visited the facilities, reviewed primary records, and interviewed patients and physicians on-site.  Just as a police officer may testify about their investigation and visit of the scene of car-crash, the PCO may testify about his visits to the Debtor's facilities, and what he saw, learned and inferred. *See generally*, *id.* ("[A]ll knowledge is inferential, and the combined effect of Rules 602 and 701 is to recognize this epistemological verity but at the same time to prevent the piling of inference upon inference to the point where testimony ceases to be reliable.").

*Second,* § 333 makes the PCO effectively a pre-approved expert witness about patient welfare under FED. R. EVID. 706 (allowing a court to appoint an expert on its own accord or by motion from a party) ("Rule 706") that may testify pursuant to Rule 703, and therefore Rule 602 does not apply.  Here, the Declarations may be considered under Rule 703 and 706 because (i) they are made pursuant to section 333 and concern patient welfare and (ii) also have "a traceable, analytical basis in objective fact,"

6

122434291\V-5

which removes the PCO's expert testimony from speculation, because the PCO, utilizing the experience that led to his assignment as PCO, personally visited the Debtor's facilities and reviewed the Debtor's records. *See In re Leap Wireless Intern., Inc.*, 301 B.R. 80, 84 (Bankr. S.D. Cal. 2003) (citing *Bragdon v. Abbott*, 524 U.S. 624, 653, 118 S. Ct. 2196, 141 L.Ed.2d 540 (1998)).

2.  *Rule 802 Objection*

DHCS' hearsay objections are made under Rule 802, which provides that "hearsay is not admissible" unless an exception applies.

Rule 703 is one of these exceptions, and "relaxes, for experts, the requirement that witnesses have personal knowledge of the matter to which they testify." *Claar v. Burlington N. R. Co.*, 29 F.3d 499, 501 (9th Cir. 1994). Under Rule 703, "[e]xperts may offer opinions based on otherwise inadmissible testimonial hearsay if 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject,' and if they are 'applying [their] training and experience to the sources before [them] and reaching an independent judgment,' as opposed to 'merely acting as a transmitter for testimonial hearsay.'" *Erhart v. BofI Holding, Inc.*, 445 F. Supp. 3d 831, 839-40 (S.D. Cal. 2020) (citing FED. R. EVID. 703; *United States v. Gomez*, 725 F.3d 1121, 1129 (9th Cir. 2013)). Here, as explained above, Dr. Rubin is properly considered an expert, and the Declarations constitute expert testimony, so the hearsay objections should be overruled.

Further, under Rule 801(d)(2), a statement is admissible is offered against a party-opponent. As the PCO is an independent actor, and effectively an intervenor in this litigation on behalf of the patients, he may introduce statements from either "party-opponent" of the Debtor or DHCS in his testimony. DHCS' statements that its hearsay objection should be given extra weight because Dr. Rubin's opinion "is entirely one-sided" because of his reliance on discussions with Debtor representatives [Docket No. 34 at 2-6 (making this argument seven times)], is not only insulting to the office of the PCO, who is independent and a *patient* advocate, it is ironic because

7

DHCS has elected not to listen or engage with Dr. Rubin. Dr. Rubin may freely use the statements from either "party opponent" in this adversary to appraise the Court of what he thinks is happening and will happen to patients. The PCO's opinion should not be struck because (i) DHCS chose not to engage productively or (ii) because Dr. Ruben sided with the Debtor's view that patients will be harmed if their medications stop or they have to travel hours, by foot, etc., for urgent care.

**D.    THE COURT MAY WEIGH THE EVIDENCE APPROPRIATELY**

Regardless, even if the Court were to determine that some portions of the Declaration constitute inadmissible hearsay or contain speculative statements or statements without foundation or knowledge, the remedy of striking entire paragraphs because they contain a reference to hearsay is not appropriate, and the Court may instead give the testimony appropriate weight. *See e.g.*, *Dayton v. Sears Roebuck & Co.*, 2014 WL 5797172, at *2 (E.D. Cal. Nov. 6, 2014) ("Generally, motions to strike are disfavored and should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."). Here, it was not appropriate for DHCS to ask the Court (the fact-finder here) to go line by line and paragraph by paragraph with a scalpel to "strike" parts of Dr. Rubin's testimony before trial, because, as explained by one District Court, "[i]f motions to strike [testimony], generally, are disfavored, motions to strike sentences or paragraphs are especially disfavored … If an [witnesses] opinion is unsupported, or if it is irrelevant, the solution is to ignore that opinion rather than to strike it." *Marine Travelift Inc. v. ASCOM SpA*, 2015 WL 9008254, at *2 (E.D. Wis. Dec. 15, 2015).

### III.    CONCLUSION

For all of the reasons set forth above, the Debtor requests that the Court overrule the Objections and consider the Declarations when deciding the Motion.

8

122434291\V-5

| | |
|---|---|
| Dated: October 4, 2022 | **DENTONS US LLP** |
| | **SAMUEL R. MAIZEL** |
| | **TANIA M. MOYRON** |
| | |
| | */s/ Tania M. Moyron* |
| | Proposed Attorneys for the Chapter 11 Debtor and Debtor In Possession |

9

122434291\V-5